**STATE of Minnesota, by its Attorney General, Warren SPANNAUS, et al., Respondents,**

v.

**MAPLE HILL ESTATES, INC., etc., et al., Appellants.**

No. 81-1141.

Supreme Court of Minnesota.

March 26, 1982.

Rehearing Denied April 23, 1982.

Rider, Bennett, Egan & Arundel and Timothy Thornton, Minneapolis, for appellants.

Warren Spannaus, Atty. Gen., St. Paul, and Alan R. Mitchell, Sp. Asst. Atty. Gen., Roseville, for respondents.

TODD, Justice.

This appeal arises out of an action for civil penalties and injunctive relief brought pursuant to Minn.Stat. § 115.071 (1980) by the State of Minnesota and the Minnesota Pollution Control Agency (hereinafter referred to collectively as the P.C.A.) against Maple Hill Estates, Inc., a Minnesota corpo-

ration, and Maple Hill's president, Mr. Marlin D. Lee. The defendants own and operate a mobile home park that utilizes a privately owned wastewater treatment facility. In its complaint the P.C.A. alleged that defendants had violated various monitoring, reporting and effluent limitation requirements found in the National Pollutant Discharge Elimination System and State Disposal System Permit (NPDES Permit) issued by the P.C.A. for Maple Hill in 1977. The P.C.A. also alleged the defendants had failed to provide a licensed operator for the Maple Hill waste treatment facility in violation of the NPDES permit and Minn.Stat. § 115.80 (1980). The defendants' answer denied the material allegations in the P.C. A.'s complaint.

On September 17, 1981, the Hennepin County District Court entered summary judgment for the P.C.A. The court enjoined the defendants from violating the terms and conditions of the NPDES discharge permit and state statutes, and ordered the installation of certain chlorination facilities. The trial court also assessed a $5,000 civil penalty against defendant Maple Hill, Inc. and a $500 penalty against defendant Marlin Lee. We reverse.

The following facts are not disputed. Maple Hill Estates, Inc. is a corporation which operates a mobile home community in the City of Corcoran in northwestern Hennepin County. In connection with its management of the mobile home park Maple Hill operates a facility to treat wastewater generated by the residences. The treatment facility consists of a screen to filter out large solids, an aeration tank in which the wastewater is oxygenated to permit bacteria to feed on and break down organic waste, a settling tank which allows bacterial floc and inorganic wastes to precipitate out of the water as sludge, and a 1.08 acre man-made pond which holds the

wastewater for 59 days. The pond permits biodegradation of remaining organic wastes outside the mechanical plant. Prior to discharge the effluent is chlorinated.

The issue to be decided on appeal is whether the trial court overlooked issues of material fact by granting the P.C.A.'s motion for summary judgment. After careful review of the pleadings and affidavits of the parties,[1] we are drawn to the conclusion that genuine issues of fact remain in this case.

In Count I of the plaintiffs' complaint the P.C.A. charges that defendants have violated effluent discharge limitations found in Maple Hill's NPDES permit. Part I section B of the permit sets 30-day average effluent limitations for $BOD_5$ (5-Day Biochemical Oxygen Demand), for TSS (Total Suspended Solids) and for fecal coliform bacteria. According to the defendants' own monthly effluent discharge reports for the 35 months preceding November 1980, reports which are summarized in the affidavit of P.C.A. Pollution Control Specialist Paul Klinge, Maple Hill Estates has exceeded $BOD_5$ effluent limitations during 4 months, TSS limitations during 15 months, and fecal coliform limitations during 14 months. However, defendant Marlin Lee states in his affidavit that high TSS and fecal coliform levels reported to the P.C.A. and now relied upon by the agency cannot be considered representative of Maple Hill's discharge. Lee explains that because discharge samples are taken through a drain near the bottom of the facilities 1.08 acre pond, a swirling of solids and sediment sometimes occurs resulting in artificially high test results. Lee claims that because the pond has a 59-day detention period, it would have been impossible for fecal coliform levels to rise and fall as quickly as reflected in discharge reports relied upon by the P.C.A.[2] Whether Maple Hill Estates

1. In support of its motion the P.C.A. submitted the affidavits of Mr. Paul Klinge, Pollution Control Specialist with the P.C.A.'s Water Quality Division, Mr. John Hensel, an engineer in the Water Quality Division, Mr. Willard Sexauer, from the agency's Operations/Training Unit, and Mr. Michael Herman, also from the Opera-

tions/Training Unit. Defendants filed a memorandum in opposition accompanied by the supporting affidavit of defendant Marlin Lee.

2. Lee cites to the fact that, according to pond test samples relied upon by the P.C.A., the fecal coliform level rose from 520 MPN/100 ml

has actually exceeded and continues to exceed TSS and fecal coliform discharge limitations is but one genuine issue of material fact which should have been reserved for trial.

In Counts II and III of the plaintiff's complaint the P.C.A. charges that defendants have violated monitoring and reporting requirements of the NPDES permit issued to Maple Hill. Part I, section D of the permit requires that the permittee take effluent test samples "at a point representative of the discharge" and that monitoring measurements taken must be "representative of the volume and nature of the monitored discharge." Part II, section A(1)(c) of the permit requires the permittee to report any effluent violations in writing to the agency. P.C.A. official Paul Klinge states in his affidavit that Maple Hill's monthly discharge reports are inadequate because all test samples are "grab samples" instead of the more accurate "4-hour composite samples." Klinge also states that discharge samples taken from Maple Hill's man-made pond are not "representative of the discharge" because the pond is not part of the wastewater treatment facility licensed by the agency. However, in the affidavit of Marlin Lee, defendant Lee claims that because drain tile was installed by Maple Hill in 1979 to prevent additional water sources (runoff) from reaching the pond, the pond *is* part of the treatment facility licensed by the agency,[3] and samples taken from the pond are therefore taken "at a point representative of the discharge." Whether discharge samples taken by Maple Hill were composite or grab samples, and whether the necessary construction has been completed so that the man-made pond may be considered part of the treatment facility, are both issues of material fact which were never resolved at the trial level.

We also find there were simply too few facts established at the trial level to justify the injunctive relief ordered by the trial court. The lower court ordered installation of chlorination facilities to decrease TSS and fecal coliform levels, yet a genuine issue of fact remains as to whether TSS and fecal coliform effluent limitations are *presently* being exceeded and, therefore, whether the chlorination facility is necessary. The trial court also absolutely enjoined the defendants from committing further statutory and/or permit violations, yet the trial court apparently failed to consider whether an immediate injunction was justified. In *Reserve Mining Co. v. Environmental Protection Agency*, 514 F.2d 492 (8th Cir. 1975), the Eighth Circuit held that the federal district court had abused its discretion by ordering an immediate abatement of the pollution:

> A court is not powerless to act in these circumstances. But an immediate injunction cannot be justified in striking a balance between unpredictable health effects and the clearly predictable social and economic consequences that would follow the plant closing.

*Id.* at 536. In the present case we are not told of the extent of environmental degradation caused by defendants' alleged effluent violations, nor are we aware of the social and economic impact an immediate injunction will have upon the defendants and, more importantly, the residents of Maple Hill Estates.

Another question remains regarding the lower court's assessment of civil penalties. While defendant Marlin Lee concedes in his affidavit that effluent violations did occur during late 1977 and 1978, Lee alleges that a "scum blanketing" problem which caused

in July of 1979 to 23,000 MPN/100 ml in August, and then fell to 100 MPN/100 ml in September.

**3.** Part I, section A of the 1977 permit issued to Maple Hill describes the treatment system as including "a 1.08 acre aerated effluent polishing pond with a 59 day detention time * * *." Part I, section C.2 of the permit expressly allows use of the pond if runoff is diverted:

> If the permittee continues to use the polishing pond as a part of the total wastewater treatment system, the permittee shall:
> a) submit to the Agency a proposal for construction necessary to insure that all surface water runoff and storm sewer discharge is diverted from the polishing pond.

the effluent violations resulted from procedures "approved by the P.C.A." Whether operational procedures approved by the agency were being followed when effluent violations occurred is a question to be resolved in determining the amount of civil penalty to be assessed.

We therefore conclude the trial court erred by granting plaintiffs' motion for summary judgment. As we have stated many times, summary judgment is proper only when there are no genuine issues of material fact. *Gaspord v. Washington County Planning Comm'*, 312 Minn. 591, 252 N.W.2d 590 (1977). While a summary judgment proceeding is designed to secure a just, speedy and inexpensive disposition of a case, it cannot be a substitute for trial. *Vieths v. Thorp Fin. Co.*, 305 Minn. 522, 232 N.W.2d 776 (1975). However, we think it important to note that a trial court is free to enter a "partial summary judgment", specifying in an order those facts which appear without substantial controversy, but reserving for trial those facts actually in dispute. *See* Minn.R.Civ.P. 56.04. Unfortunately, that procedure was not followed in the present case.

Accordingly, the decision of the trial court is reversed, and this case is remanded for proceedings consistent with this opinion.